**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*ex rel.* VERITY INVESTIGATIONS, LLC,<br><br>        *Plaintiff/Relator*,<br><br>   v.<br><br>CHINA JUSHI USA CORPORATION,<br><br>        *Defendant.* | Case No. <u>3:25-cv-1255-SAL</u><br><br>**ORIGINAL COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT, 31 U.S.C. § 3729 *et seq.***<br><br>**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**<br><br>**DO NOT PLACE IN PRESS BOX**<br><br>**Jury Trial Demanded** |

## *QUI TAM* COMPLAINT

### I. INTRODUCTION

1.  This is a *qui tam* case, filed on behalf of the federal government, seeking to recover over $3.5 million (plus mandatory trebling) that Defendant wrongfully obtained in the form of a federal guaranteed loan by falsely certifying that it was a small business concern. The loan was later forgiven, and the federal government paid the bill.

2.  The loan in question was provided by the Small Business Administration's ("SBA's") Paycheck Protection Program ("PPP"). The PPP was created by Congress near the start of the COVID-19 epidemic in the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") in 2020, and then received additional funding ($284 billion) in December 2020 in the "Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act." 15 U.S.C. § 636(a)(37).

3.  In April 2020, the SBA authorized a first series of PPP loans, which are known as "First Draw" PPP loans. This case involves a false application for a First Draw PPP loan.

4.  The PPP loans were made available only to "small" businesses. The SBA established a clear, bright-line rule for who counted as "small."

5.  For First Draw PPP loans, applicants were required to certify that they (both the applicant and its domestic and foreign affiliates) met the size standard—(a) collectively employed 500 or fewer persons, (b) met the SBA employee-based or revenue-based industry size standards, or (c) met the SBA alternative size standard that (i) the tangible net worth of the business is not more than $15 million and (ii) the average net income for two fiscal years before the date of the application is not more than $5 million.

6. Defendant falsely certified to the SBA that it met the size standard for a small business. As a direct result of those false statements, Defendant obtained a First Draw PPP loan in the amount of $3,558,182, which was later forgiven.

7. Relator is an outside investigative company that detected Defendant's fraud by reviewing the Defendant's affiliate's financial reports. Those reports demonstrate that Defendant and its affiliates had a tangible net worth that far exceeded the $15 million threshold, had an average net income that far exceed the $5 million threshold, and employed more than 11,000 employees during the relevant time period.

## II.    THE PARTIES

8. Plaintiff Verity Investigations LLC ("Relator") is an investigative firm formed by two professionals with widespread experience in detecting and reporting fraud on the U.S. public fisc.

9. Defendant China Jushi USA Corporation is a South Carolina corporation with its principal place of business in Richland County, South Carolina.

## III.    JURISDICTION AND VENUE

10. This action arises under the laws of the United States to redress violations of the Federal False Claims Act, 31 U.S.C. §§ 3729–33 ("FCA").

11. Subject-matter jurisdiction is conferred by 28 U.S.C. §§ 1331, 1345.

12. Venue is proper, and this Court has personal jurisdiction over Defendant, because Defendant is "found" in this District. 31 U.S.C. § 3732(a).

## IV.    THE FALSE CLAIMS ACT

13. The FCA is the primary civil remedial statute designed to deter fraud upon the United States. Its purpose is to "enhance the Government's ability to recover losses sustained as a result of fraud against the Government." S. Rep. No. 99-345, at 1 (July 28, 1986).

14.     A defendant violates the FCA when the defendant "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A).

15.     Under the FCA, a claim includes a request for money. 31 U.S.C. § 3729(b)(2). A claim is "false or fraudulent" under the FCA if the entity or person submitting the claim was not entitled to payment.

16.     In 2009, Congress amended the FCA through the Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. No. 111-21 (May 20, 2009), making a defendant liable under the FCA when the defendant "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B).

17.     Under the FCA, the terms "knowing" and "knowingly" mean that the defendant "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A).

18.     No proof of specific intent to defraud the Government is required to show that a defendant acted knowingly under the FCA. 31 U.S.C. § 3729(b)(1)(B).

19.     The terms "knowing," "knowingly," "knowledge," "knows," and "knew," as used in this Complaint, have the meaning ascribed to them by the FCA.

20.     The FCA defines the term "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

21.     The FCA broadly defines a "claim" as "any request or demand . . . for money or property" that: "(i) is presented to an officer, employee, or agent of the United States," or "(ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States

Government (I) provides or has provided any portion of the money or property requested or demanded; or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2).

22.     False statements made in a loan application to a third-party lender qualify as "false claims" to the government where, as here, the loan is guaranteed by the federal government and the federal government later repays the lender. *See United States v. Van Oosterhout*, 96 F.3d 1491, 1494 (D.C. Cir. 1996).

## V.     NO "PUBLIC DISCLOSURE" AND RELATOR IS AN ORIGINAL SOURCE

23.     On information and belief, no "public disclosure" has been made of Defendant's false statements and fraud detailed herein. 31 U.S.C. § 3730(e)(4)(A).

24.     On information and belief, Defendant's fraudulent transactions have not been publicly disclosed in a federal criminal, civil, or administrative hearing in which the Government or its agent is a party; in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or by the news media.

25.     Even if there had been a "public disclosure," that would not matter in this case because Relator is an "original source of the information" set forth in this complaint. 31 U.S.C. § 3730(e)(4)(A).

26.     Relator's knowledge is independent of and materially adds to any publicly disclosed aspects of the fraudulent transactions described herein. Among other things, Relator has "connected the dots" between (a) Defendant's affiliate's financial reports, and (b) Defendant's false certifications for the First Draw PPP loan.

27.     Prior to filing this action, Relator voluntarily provided the Government with this complaint and all material evidence in Relator's possession relating to the fraudulent transactions.

## VI.   THE FIRST DRAW PPP LOAN PROGRAM

28.    To be eligible for a First Draw PPP loan, borrowers were required to meet one of the following criteria: "employs not more than the greater of" (1) "500 employees; or" (2) "if applicable, the size standard in number of employees established by the Administration for the industry in which the business concern, . . . operates," 15 U.S.C. § 636(a)(36)(D); or (3) meets the "alternative size standard" as of March 27, 2020 with (a) "maximum tangible net worth of the applicant is not more than $15,000,000"; and (b) "the average net income after Federal income taxes (excluding any carry-over losses) of the applicant for the 2 full fiscal years before the date of the application is not more than $5,000,000." 15 U.S.C. § 632(a)(5).

29.    The SBA's website explained "who may qualify" for a First Draw PPP loan. This was explained in an overview page of the website[1] and in the online "Frequently Asked Questions" document available on the website.[2]

30.    The SBA's FAQ stated that "borrowers" were "required to apply SBA's affiliation rules under 13 C.F.R. 121.301(f)." The FAQs clarified that applicants are required to apply the affiliation rules "with regard to counting the employees of foreign and U.S. affiliates."[3]

31.    That regulation—13 C.F.R. § 121.301(f)—stated that when counting "employees," an applicant must include the employees of "all of its domestic and foreign affiliates." 13 C.F.R. § 121.301(f)(6).[4]

32.    That regulation defined affiliation broadly:

---

[1] SMALL BUSINESS ADMINISTRATION, First Draw PPP loan, https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/first-draw-ppp-loan.

[2] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders (Version 10, as of May 13, 2020).

[3] SMALL BUSINESS and ADMINISTRATION, FAQ for PPP Borrowers and Lenders at 2, 15 (Questions 5 and 44) (Version 10, as of May 13, 2020).

[4] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).

a.      Affiliation includes "affiliation based on ownership." "For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern. SBA will deem a minority shareholder to be in control, if that individual or entity has the ability, under the concern's charter, by-laws, or shareholder's agreement, to prevent a quorum or otherwise block action by the board of directors or shareholders." *See* 13 C.F.R. § 121.301(f)(1).[5]

b.      Affiliation may also arise "under stock options, convertible securities, and agreements to merge." *See* 13 C.F.R. § 121.301(f)(2).[6]

c.      Affiliation may arise "based on management:" "Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one or more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement." *See* 13 C.F.R. § 121.301(f)(3).[7]

d.      Affiliation may arise "based on identity of interest:" "Affiliation arises when there is an identity of interest between close relatives, as defined in 13 CFR 120.10, with identical or

---

[5] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).
[6] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).
[7] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).

substantially identical business or economic interests (such as where the close relatives operate concerns in the same or similar industry in the same geographic area). Where SBA determines that interests should be aggregated, an individual or firm may rebut that determination with evidence showing that the interests deemed to be one are in fact separate." *See* 13 C.F.R. § 121.301(f)(4).[8]

e.    Affiliation may arise "based on franchise and license agreements:" "The restraints imposed on a franchisee or licensee by its franchise or license agreement generally will not be considered in determining whether the franchisor or licensor is affiliated with an applicant franchisee or licensee provided the applicant franchisee or licensee has the right to profit from its efforts and bears the risk of loss commensurate with ownership. SBA will only consider the franchise or license agreements of the applicant concern." *See* 13 C.F.R. § 121.301(f)(5).[9]

33.    The SBA required borrowers to submit a First Draw borrower application form (SBA Form 2483) to a federally insured bank or similar credit institution, which would process the loan application and fund the loan.

34.    The SBA Form 2483 required the borrower to state its "Number of Employees."

35.    The SBA Form 2483 then required the applicant's authorized representative to certify eligibility by signing a statement that "[t]he Applicant . . . employs no more than the greater of 500 or [*sic*] employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry."

36.    The SBA Form 2483 then required the applicant's authorized representative to certify eligibility by signing a statement that "The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I

---

[8] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).
[9] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).

of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule)."

37.        The SBA Form 2483 also required the applicant's authorized representative to initial to "certify that the information provided in this application . . . is true and accurate," and to acknowledge "that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000 . . . ."

38.        The SBA guaranteed 100% of the outstanding balance of Defendant's First Draw PPP loan. The guarantee was backed by the full faith and credit of the United States. 15 U.S.C. § 636(a)(2)(F).

## VII.    DEFENDANT FALSELY CERTIFIED TO THE SBA ITS COMPLIANCE WITH THE FIRST DRAW PPP LOAN SIZE REQUIREMENTS

### A.    BACKGROUND: DEFENDANT JUSHI USA AND ITS AFFILIATES

39.        Defendant China Jushi USA Corporation ("Jushi USA") is a corporation registered in South Carolina and headquartered at 2971 Shop Rd, Columbia, SC 29209.[10]

40.        Jushi USA can be validly served with process via its registered agent at 2 Office Park Court, Suite 103, Columbia, South Carolina 29223.[11]

41.        China Jushi Co., Ltd. ("China Jushi") is Jushi USA's parent company.[12]

42.        China Jushi's headquarters are in China at 318 Fenghuanghu Avenue, Wutong District, Tongxiang, Zhejiang 314500. China Jushi specializes in the manufacture and sales of

---

[10] South Carolina Secretary of State Business Search, China Jushi USA Corporation (00462556); China Jushi Website, https://www.jushi.com/en/map/jushi-egyptian-glass-fiber-co-ltd-438.html.
[11] South Carolina Secretary of State Business Search, China Jushi USA Corporation (00462556).
[12] China Jushi Website, Business Segments, https://www.jushi.com/en/business.

fiberglass. It touts itself as "one of the largest enterprises in the new material industry of China and in 1999, it got listed on the Shanghai Stock Exchange."[13]

43.    China Jushi created Jushi USA in order to build a 200,000 tons/year fiberglass production based in the United States. Its website explains the first phase for the construction of this base was to build a 96,000 tons/year production line with a capital investment of 350 million US dollars, which is the largest foreign investment in Richland County since 1984. This line created more than 500 jobs in the local South Carolina region and over 1,000 jobs for relevant industry fields.[14]

44.    China Jushi identifies the following entities as part of the Jushi Group:

      a.   Jushi Group Huaian Co., Ltd.;
      b.   Jushi Group Chengdu Co., Ltd.
      c.   Jushi Group Jiujiang Co., Ltd.
      d.   Jushi Egypt for Fiberglass Industry S.A.E;
      e.   Jushi Canada Fiberglass Co. Ltd.;
      f.   Jushi France SAS;
      g.   Jushi Italy SRL;
      h.   Jushi Korea Co., Ltd.;
      i.   Jushi India Fiberglass Pvt Ltd.;
      j.   Jushi Group (SA) Sinosia Composite Materials Co., Ltd.;
      k.   Jushi Group (HK) Sinosia Composite Materials Co., Ltd.;
      l.   Jushi Group (BZ) Sinosia Composite Materials Co., Ltd.;
      m.   Jushi Spain .S.A.;
      n.   Jushi USA Fiberglass Co., Ltd.;
      o.   Jushi Japan Co., Ltd.;
      p.   Jushi Group Hong Kong Co., Limited.[15]

---

[13] China Jushi Website, About, https://www.jushi.com/en/about.
[14] China Jushi Website, Business Segments, https://www.jushi.com/en/business.
[15] China Jushi Website, Subsidiaries, https://www.jushi.com/en/subsidiary.

45.     On information and belief, Jushi USA, China Jushi, and the entities listed in ¶ 44, *supra*, qualify as "affiliates" for purposes of the PPP Loan program under one or more of the alternative definitions provided in 13 C.F.R. § 121.301(f).

**B.      JUSHI USA' FALSE STATEMENT TO OBTAIN A PPP LOAN**

46.     In 2020, Jushi USA submitted a borrower application for a First Draw PPP loan.

47.     Jushi USA submitted its borrower application, SBA Form 2483, to TD Bank, N.A. ("TD Bank") in Wilmington, Delaware.

48.     In its SBA Form 2483, Jushi USA listed its address as 2971 Shop Road, Columbia, SC 29209.

49.     In its SBA Form 2483, Jushi USA certified that it and its affiliates met the small business size standard by (1) having no more than 500 employees, (2) meeting the SBA industry size standards, or (3) meeting the SBA alternative size standard.

50.     Jushi USA is classified under NAICS code 327212, which covers the industry for Other Pressed and Blown Glass and Glassware Manufacturing. The SBA industry size standard for NAICS code 327212 is 1,250 employees. *See* 13 C.F.R. § 121.201 (effective Nov. 20, 2019 to May 1, 2022).

51.     In its SBA Form 2483, Jushi USA represented that it and its affiliates had 498 employees—narrowly under the 500-employee limit needed to be eligible to apply.

52.     Jushi USA's certification in SBA Form 2483 that it met the size standards for a First Draw PPP loan was false. In 2019 and 2020, Jushi USA and its affiliates had (1) far more than 500 employees; and (2) a maximum tangible net worth greater than $15 million.

53.     Jushi USA deliberately ignored the fact that, together with its affiliates, it did not meet the SBA size standards for obtaining a First Draw PPP loan. Jushi USA signed its false SBA Form 2483 with knowledge of, or reckless disregard for, the truth.

54.     On or about July 31, 2020, Jushi USA was approved for a First Draw PPP loan in the amount of $3,558,182 by lender TD Bank.

55.     The U.S. government paid lender TD Bank a lender's processing fee of 1% of the $3,558,182 loan, in the amount of $35,581.82.[16]

56.     On or about June 22, 2021, the U.S. government forgave 100% of Jushi USA's First Draw PPP loan, plus interest, in the amount of $3,590,007.96.

### C.     EVIDENCE OF NUMBER OF EMPLOYEES

57.     In its SBA Form 2483, a company must include "the employees of its domestic and foreign affiliates" in calculating its number of employees. *See* 13 C.F.R. § 121.106(b)(1).

58.     The 2019 annual financial report for Defendant's parent company China Jushi indicates the subsidiary companies in the China Jushi corporate group collectively had 11,272 employees in 2019.[17]

59.     The 2020 annual financial report for Defendant's parent company China Jushi indicates the subsidiary companies in the China Jushi corporate group collectively had 11,593 employees in 2020.[18]

60.     If Defendant Jushi USA had counted its affiliates' employees in its First Draw loan application, it would have reported far more than the 500-employee limit.

61.     On information and belief, Defendant's and its affiliates' payroll records from 2019, 2020, and 2021 will confirm what Defendant always knew—that it and its affiliates collectively employed well over 500 employees throughout the time period 2019–2021.

---

[16] Paycheck Protection Program (PPP) Information Sheet: Lenders, https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf.
[17] China Jushi 2019 Annual Report (English Translation) at 50.
[18] China Jushi 2020 Annual Report (English Translation) at 55.

### D.   EVIDENCE OF NET WORTH AND AVERAGE NET INCOME GREATER THAN THE ALTERNATIVE SIZE STANDARD

62.     Defendant was not eligible for a First Draw PPP loan under the SBA's alternative size standard. That standard required Defendant to show that it and its affiliates had **both** (i) tangible net worth of not more than $15 million, **and** (ii) average net income of less than $5 million for the two fiscal years before the date of Defendant's 2020 application for a First Draw PPP loan.

63.     Defendant and its affiliates had a maximum tangible net worth of more than $15 million in 2019 and 2020. The 2020 annual financial report for China Jushi demonstrates a maximum tangible net worth of over **$2.10 billion** in 2019 and **$2.59 billion** in 2020. These figures are far above the $15 million dollar threshold.[19]

| Unit: CNY (Thousands) | As of Dec. 31, 2020 | As of Dec. 31, 2019 |
|---|---|---|
| **Total Assets** | **36,737,268,363** | **33,604,242,332** |
| Less: Total Liabilities | (18,391,069,312) | (17,523,705,220) |
| **Net Worth** | **18,346,199,051** | **16,080,537,112** |
| Less: Right-of-use Assets | (4,363,453) | (4,983,340) |
| Less: Intangible Assets | (782,786,193) | (803,149,057) |
| Less: Goodwill | (472,512,501) | (472,512,501) |
| Less: Long-term Deferred Expenses | (3,708,443) | (4,331,724) |
| Less: Deferred Income Tax Assets | (150,236,453) | (153,320,781) |
| **Tangible Net Worth** | **16,932,592,007** | **14,642,239,709** |
| | | |
| Exchange Rate (1 CNY = USD) | 0.15308 USD | 0.14361 USD |
| **Tangible net worth (USD)** | **$2,592,041,184** | **$2,102,772,045** |

64.     China Jushi's 2019 annual financial report demonstrates that Defendant and its affiliates had a net income of CNY 2,385 million as of December 31, 2018 and CNY 2,113 million as of December 31, 2019. These figures average to CNY 2,249 million. Using an exchange rate of

---

[19] China Jushi 2020 Annual Report (English Translation) at 66-68 (Consolidated Balance Sheet).

1 CNY equal to 0.14361 USD, CNY 2,249 million equals **$323 million**—far above the $5 million threshold.[20]

65.     Given this tangible net worth and average net income, Defendant could not have qualified for a First Draw PPP loan under the SBA's alternative size test.

### FIRST CAUSE OF ACTION
### Submitting False Claims for Payment
### 31 U.S.C. § 3729(a)(1)(A)

66.     Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

67.     Defendant violated 31 U.S.C. § 3729(a)(1)(A) by knowingly presenting and/or causing to be presented to the lender a claim for approval of the First Draw PPP loan.

68.     Defendant's knowingly false claim in its SBA Form 2483 was material to the lender's decision to issue the First Draw PPP loan and was material to the SBA's decision to forgive the loan and repay the lender.

69.     But for Defendant's knowingly false claim, the lender would not have issued the loan and the SBA would not have forgiven it.

70.     The First Draw PPP loan that Defendant obtained was money that was intended by the Government to be spent or used to advance the Government's program and interest in assisting qualified and eligible small businesses to survive the COVID-19 epidemic and to continue to employ their workers.

71.     The First Draw PPP loan that Defendant obtained was money that the Government effectively and in practice provided to the lender, by means of the Government's 100% guarantee to the lender of repayment by the Government in the case of default by the borrower.

---

[20] China Jushi 2019 Annual Report (English Translation) at 67 (Consolidated Income Statement).

72.     The Government later reimbursed the lender 100% of the amount of Defendant's First Draw PPP loan, with interest.

## SECOND CAUSE OF ACTION
### Creating a False Record or Statement Material to a False Claim
### 31 U.S.C. § 3729(a)(1)(B)

73.     Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

74.     Defendant violated 31 U.S.C. § 3729(a)(1)(B) by knowingly making or causing to be made a false records and statements—namely, its SBA Forms 2483 and included certifications—to support a false claim submitted to the lender for approval of the First Draw PPP loan.

75.     Defendant's knowingly false records and statements were material to the lender's decisions to issue the First Draw PPP loan and were material to the SBA's decisions to forgive the loan and repay the lender.

76.     But for Defendant's knowingly false records and statements, the lender would not have issued the loan and the SBA would not have forgiven it.

## PRAYER FOR RELIEF

**WHEREFORE**, Relator requests judgment against Defendant for: (i) three times the amount of damages that the United States has sustained (including the full amount of the forgiven First Draw PPP loan and interest thereon, plus all processing fees paid by the Government); (ii) the maximum civil penalties allowed by law; (iii) an award to Relator for the maximum allowed under 31 U.S.C. § 3730(d); (iv) an award of attorneys' fees, costs, and expenses; (v) interest as provided by law; and (vi) any other relief that this Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.

Respectfully submitted,

ROBINSON GRAY STEPP & LAFFITTE, LLC

By: s/Beth B. Richardson
        Beth B. Richardson, Fed. ID No. 9335
        PO Box 11449
        Columbia, SC 29211
        Telephone: 803.231.7819
        Facsimile: 803-929-0300
        brichardson@robinsongray.com

        Stephen Shackelford, Jr. *(to seek pro hac vice)*
        Steven M. Shepard *(to seek pro hac vice)*
        **SUSMAN GODFREY L.L.P.**
        One Manhattan West, 50th Floor
        New York, NY 10001
        Telephone: (212) 336-8330
        Facsimile: (212) 336-8340
        sshackelford@susmangodfrey.com
        sshepard@susmangodfrey.com

        ***Attorneys for Relator Verity Investigations, LLC***

Columbia, South Carolina
February 28, 2025